# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Carlos Gonzalez-Rojas, | Case No.:  2:21-cv-01652-APG-DJA |
| Petitioner | **Order Denying Petition, Denying Certificate of Appealability and Closing Case** |
| v. | |
| Calvin Johnson, et al., | |
| Respondents | |

Carlos Gonzalez-Rojas filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  For the reasons discussed below, I deny the petition.

## I. BACKGROUND & PROCEDURAL HISTORY

In 2017, a jury convicted Gonzalez-Rojas of several sexual offenses, including five counts of sexual assault with use of a deadly weapon. (Exhibits 27, 45,[1] *see also* ECF No. 1 at 2-3.)  The convictions stemmed from an incident when he stabbed his estranged wife, Arely Lizarraga in the leg and raped her repeatedly in her apartment after accusing her of "cheating." (*See* ECF No. 16 at 2-5.)  The state district court sentenced him to terms that amount to an aggregate total of 17 years-to-life in prison. (Exhs. 47, 62.)  An amended judgment of conviction was entered on March 5, 2018. (Exh. 62.)[2]

---

[1] Exhibits referenced in this order are the respondents' exhibits in support of their answer, ECF No. 16, and are found at ECF Nos. 17-30.

[2] In June 2017, Gonzalez-Rojas was tried on 11 counts; the jury convicted him of two counts and the court declared a mistrial as to the remaining counts. (Exh. 27.)  At a second trial in August 2017, the jury convicted him of the remaining counts. (Exh. 45.)

The Nevada Supreme Court affirmed Gonzalez-Rojas' convictions in March 2019, and the Nevada Court of Appeals affirmed the denial of his state postconviction habeas corpus petition in August 2021. (Exhs. 77, 103.)

Gonzalez-Rojas filed his federal habeas petition in September 2021. (ECF No. 1.)  He asserts three claims that his trial counsel rendered ineffective assistance in violation of his constitutional rights. (ECF No. 16.)  The respondents filed an answer and Gonzalez-Rojas, who is represented by counsel, did not file a reply.

**II. LEGAL STANDARDS**

**A.      AEDPA Standard of Review**

The standard of review generally applicable in habeas corpus cases is set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an

unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id*. (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75; *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

To the extent that the petitioner challenges the state court's factual findings, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *See, e.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a mere showing that the state court finding was "clearly erroneous." *Lambert*, 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of

1  appellate review, could not reasonably conclude that the finding is supported by
   the record.
2
3  *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

4       Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct

5  unless rebutted by clear and convincing evidence.  The petitioner bears the burden of proving by

6  a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

7       **B.       Ineffective Assistance of Counsel**

8       Federal courts address ineffective assistance of counsel (IAC) claims under the two-part

9  test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Supreme

10 Court held that a petitioner claiming ineffective assistance of counsel has the burden of

11 demonstrating that (1) the attorney "made errors so serious that he or she was not functioning as

12 the 'counsel' guaranteed . . . by the Sixth Amendment," and (2) "that the deficient performance

13 prejudiced the defense." *Williams*, 529 U.S. at 3991 (quoting *Strickland*, 466 U.S. at 687)).  To

14 establish ineffectiveness, the defendant must show that counsel's representation fell below an

15 objective standard of reasonableness. *Id*. at 391 (citation and internal quotation marks omitted).

16 To establish prejudice, the defendant must show that there is a reasonable probability that, but

17 for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*.

18 (citation and internal quotation marks omitted).  A reasonable probability is "probability

19 sufficient to undermine confidence in the outcome." *Id*. (citation and internal quotation marks

20 omitted).  Additionally, any review of the attorney's performance must be "highly deferential"

21 and must adopt "counsel's perspective at the time" of the challenged conduct to avoid "the

22 distorting effects of hindsight." *Strickland*, 466 U.S. at 689.  It is the petitioner's burden to

23 overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

24

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotation marks and citations omitted).

If the state court has already rejected an IAC claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

Federal review of a state supreme court's decision on a claim of ineffective assistance of counsel is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court has emphasized that: "We take a highly deferential look at counsel's performance . . . through the deferential lens of § 2254(d)." *Id*. (citations and internal quotation marks omitted). Moreover, federal habeas review of an IAC claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a strong presumption that counsel's representation was within the 'wide range' of

1  reasonable professional assistance." *Id.* at 104 (citations and internal quotation marks omitted).

2  "The question is whether an attorney's representation amounted to incompetence under

3  prevailing professional norms, not whether it deviated from best practices or most common

4  custom." *Id.* (internal quotation marks and citations omitted).

5  **III. ANALYSIS**

6  **A.    Relevant Background Trial Testimony**

7  Arely Lizarraga testified at trial that Gonzalez-Rojas picked her up from work on the day

8  in question. (Exh. 40 at 5-136.)  They were living separately, but she had let him leave some

9  belongings in her apartment.  She asked him to drop her at a friend's.  He drove to her apartment

10  instead, telling her he had a surprise for her.  They went into her apartment; a teddy bear had

11  been destroyed and the stuffing was strewn all over.  He began yelling, accusing her of cheating

12  on him.  He took a knife from a bag and stabbed her in the leg.  He seemed to be scared at that

13  point; he helped Lizarraga bind the wound with a shirt and helped her to the bedroom.  He had

14  tied ropes to the bed.  He tied her to the bed.  Lizarraga testified specifically about the numerous

15  ways he raped her and beat her up.  Later, she was able to grab her purse and run out the front

16  door.  She ran to the front office and asked the woman there to call the police.  Ultimately police

17  transported her to the hospital where she was interviewed, examined, and treated for numerous

18  injuries.  On cross-examination Lizarraga denied that any part of the sex was consensual.  She

19  acknowledged that she agreed with Gonzalez-Rojas that they should have a baby; she said she

20  only said that to try to calm him down and make him stop.

21  A manager of the apartment complex testified that on the morning in question a woman

22  came into the office. (Exh. 38 at 79-115.)  She looked panicked and like she had been crying.

23  She was speaking Spanish and showed the manager a wound on her leg and said "pistola."  She

24  kept watching the door; when she saw a Hispanic man approach, she went into the break room

and closed the door.  The manager and two other employees called 911.  She walked the State

through the surveillance video that showed what she had described.  Another employee who was

present testified that Lizarraga came into the office looking scared and pale and had two black

eyes and a gash on her nose. (*Id*. at 115-134.)  A housekeeper who spoke Spanish and English

testified that Lizarraga said that she had been stabbed, held hostage, and raped. (*Id*. at 134-160.)

Later when the housekeeper entered Lizarraga's apartment she found it in disarray with

overturned furniture, stuffed animal stuffing strewn everywhere, and what appeared to be blood

stains and trails of blood.

A sexual assault nurse testified that she examined Lizarraga. (Exh. 42 at 68-133.)  She

observed that Lizarraga had black eyes, trauma over her cheek area, swollen lips, dried blood on

her nostril, stab wounds to her thigh and arm; she also identified anal and perianal injuries.

Las Vegas Metropolitan Police (LVMPD) Detective Nicholas Madsen testified that he

interviewed Lizarraga at the hospital. (Exh. 41 at 25-75.)  She told him Gonzalez-Rojas took her

back to her apartment where she saw a teddy bear that had been cut to pieces and thrown around

the apartment.  She screamed, and Gonzalez-Rojas stabbed her.  Ultimately, he tied her to the

bed, beat her repeatedly, and assaulted her repeatedly with a vibrator and his penis.  Madsen also

interviewed Gonzalez-Rojas at the police station; that interview was played for the jury.  Madsen

testified that during the interview Gonzalez-Rojas admitted that he stabbed Lizarraga and

punched her repeatedly. He said she said "no, no, no" repeatedly while he sexually assaulted her.

**B. Ineffective Assistance of Trial Counsel Claims**

**Ground 1**

Gonzalez-Rojas argues that his trial counsel was ineffective under the Fifth, Sixth, and

Fourteenth Amendments for failing to move to exclude his statements to police as obtained in

violation of his *Miranda* rights. (ECF No. 1 at 17-20.)  He insists that he invoked his right to

1  remain silent on two separate occasions—during his initial arrest and then also during his

2  interview at the police station.

3          The Fifth Amendment to the United States Constitution guarantees the privilege against

4  self-incrimination.  In *Miranda v. Arizona*, 384 U.S. 436 (1996), the Supreme Court established

5  procedural safeguards to protect the exercise of the privilege against self-incrimination.  Prior to

6  questioning, law enforcement must inform the suspect of his or her right to remain silent and the

7  right to have counsel present during interrogation.  A suspect has the right to cut off questioning

8  at any time. *Id.*

9          Las Vegas Metropolitan Police Officer Matthew Rowe testified at trial that he was the

10 arresting officer. (Exh. 38 at 160-174.)  He handcuffed Gonzalez-Rojas and placed him in his

11 patrol car.  Rowe read Gonzalez-Rojas his *Miranda* rights in English; Gonzalez-Rojas indicated

12 that he understood his rights.  Gonzalez-Rojas then told Rowe that he would speak to the officer,

13 but he wanted to talk to his wife first.  Rowe was not going to permit Gonzalez-Rojas to speak to

14 his wife, so he stopped the questioning.

15         Police detective Nicholas Madsen testified that he interviewed Gonzalez-Rojas at the

16 police station. (ECF No. 38 at 25-75.)  Madsen read him his *Miranda* rights.  Madsen said that

17 initially Gonzalez-Rojas said that he didn't want to say anything.  Madsen said that then after

18 pausing for about 20 or 30 seconds, Gonzalez-Rojas initiated the conversation. (*Id.* at 43.)  After

19 that Gonzalez-Rojas never said that he wanted to stop the interview or that he wanted an

20 attorney. (*Id.* at 71-72.)

21         Gonzalez-Rojas insists that two *Miranda* violations occurred—first when he told police

22 that he would only talk to them if he could speak with Arely first.  He argues that Rowe properly

23 stopped questioning him but improperly placed him in an interview room at the police station.

24

1   He also contends that Madsen violated his *Miranda* rights when Gonzalez-Rojas told him he did

2   not want to speak to him.

3          The Nevada Court of Appeals rejected this IAC claim, reasoning that the fact that the

4   detective remained silent for about 30 seconds did not demonstrate coercion or otherwise render

5   Gonzalez-Rojas' subsequent statements involuntary:

6          The arresting officer testified at trial that he administered *Miranda*
        warnings to Gonzalez-Rojas, who indicated he understood his rights and would
7       speak with officers if he could first speak to the victim.  This was not an
        unambiguous invocation of his right to remain silent as it was conditioned on his
8       ability to first speak with the victim.  Therefore, Gonzalez-Rojas did not
        demonstrate that counsel's failure to move to exclude his statements to the
9       arresting officer was objectively unreasonable.

10         The interviewing detective testified that, after Gonzalez-Rojas was
        transported to an interview room, he was again administered *Miranda* warnings
11      and Gonzalez-Rojas indicated he understood his rights and agreed to be
        interviewed.  At some point during the interview, Gonzalez-Rojas stated he did
12      not want to "say nothin'."  The detective took the statement to mean Gonzalez-
        Rojas no longer wanted to be interviewed.  The officer ceased questioning, and
13      there was an approximately 30-second silence before Gonzalez-Rojas broke the
        silence and started speaking again.
14
           The record reflects that Gonzalez-Rojas understood the *Miranda* warnings
15      administered to him by the detective prior to his interview.  And while Gonzalez-
        Rojas alleges the detective was required to cease interrogation in the face of
16      Gonzalez-Rojas' alleged invocation, the mere fact that the detective remained in
        silence in the interrogation room for up to 30 seconds before Gonzalez-Rojas
17      reinitiated the conversation does not amount to intimidation, coercion, or
        deception that would render Gonzalez-Rojas' statements involuntary.
18      Accordingly, to the extent Gonzalez-Rojas unambiguously invoked his right to
        remain silent during this interview, we conclude he implicitly waived his *Miranda*
19      rights by making unsolicited and uncoerced statements.  Therefore, Gonzalez-
        Rojas did not demonstrate that counsel's failure to move to exclude his statements
20      to the detective was objectively unreasonable.

21         Moreover, in light of the significant evidence of his guilt presented at trial,
        Gonzalez-Rojas did not demonstrate a reasonable probability of a different
22      outcome had counsel moved to exclude his statements.  Therefore, we conclude
        the district court did not err by denying this claim without first conducting an
23      evidentiary hearing.

24  (Exh. 103 at 4-5.)

Gonzalez-Rojas fails to show deficiency or prejudice. First, when he indicated that he would talk to Officer Rowe if he was allowed to speak with his wife first, Rowe did not pursue any questioning after that point. Once police placed Gonzalez-Rojas in an interview room, Officer Madsen again read him the *Miranda* warnings. Madsen testified that Gonzalez-Rojas expressed that he did not want to talk, paused briefly, then began talking. Gonzalez-Rojas has not shown that he was coerced or intimidated into making any statements to Madsen. He has failed to demonstrate that the Nevada Court of Appeals' decision was contrary to, or involved an unreasonable application of, *Strickland*. *See* 28 U.S.C. § 2254(d). I deny federal habeas relief as to ground 1.

**Ground 2**

Gonzalez-Rojas asserts that his counsel was ineffective for failing to investigate or present expert testimony regarding immigration benefits to the victim. (ECF No. 1 at 20-28.)

The defense filed a "motion to allow discussion of alleged victim's immigration status at trial." (Exh. 31.) The state district court held an evidentiary hearing. A man named Carlos Gonzalez testified that he was Gonzalez-Rojas' brother. (Exh. 39 at 5-24.) He said that after the incident, Lizarraga told him that Gonzalez-Rojas wasn't going to help her with her immigration paperwork, but now she would be able to get paperwork completed due to the domestic violence incident. Wendy Gonzalez, Gonzalez-Rojas' sister, testified that after the incident Lizarraga told her that she was no longer going to go through Gonzalez-Rojas to obtain permanent residency because she could use the domestic violence incident to get permanent residency. (*Id*. at 28-39.) Wendy did not know why Lizarraga thought she could do that. Wendy also testified that in any event Lizarraga already had permanent residency prior to the incident. The court concluded, "I don't think it panned out to anything," and denied the motion. (Id. at 43.) Lizarraga had also testified at an earlier hearing that she did not remember anyone telling her that she could become

1   a U.S. citizen faster if she was a victim of domestic violence. (Exh. 18 at 43-50.)  When pressed,

2   she said that she cannot remember everything she says.  She agreed she was in the U.S. on a

3   green card.  On cross-examination Lizarraga said that no one ever told her that this prosecution

4   could get her citizenship faster.

5        The Nevada Court of Appeals affirmed the denial of this claim:

6           Gonzalez-Rojas claimed trial counsel was ineffective for failing to
        investigate or present expert testimony regarding how a conviction in the instant
7        case would positively affect the victim's path to citizenship.  Counsel filed a
        motion in the trial court to allow him to elicit evidence at trial regarding the
8        victim's subjective belief as to the effect a conviction in this case would have on
        her immigration status.  This would have allowed counsel to argue that this belief
9        constituted a motive for the victim to lie about the events.  During a midtrial
        evidentiary hearing on the motion, counsel and the trial judge engaged in a
10       discussion regarding whether there would be an actual effect on the victim's
        immigration status.  The trial court concluded there would not be.  In his petition,
11       Gonzalez-Rojas argued that, had counsel done a more thorough investigation or
        consulted with an expert, he could have successfully rebutted the trial court's
12       conclusion as to the actual effect of a conviction.  Gonzalez-Rojas failed to
        demonstrate counsel was objectively unreasonable for not anticipating that the
13       trial court would discuss the actual effect of a conviction rather than focusing
        exclusively on the victim's subjective belief.

14
           Moreover, the district court stated that the relevant inquiry was the
15       victim's subjective belief and did not rely on the actual effect on the victim's
        immigration benefits in denying counsel's motion in limine.  Additionally,
16       Gonzalez-Rojas did not specify what an expert would have said about, or how a
        conviction would have impacted, the victim's actual immigration status. *See*
17       *Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) (providing a
        defendant alleging a failure to investigate must demonstrate that additional
18       investigation would have altered the outcome of the trial).  He thus failed to
        demonstrate a reasonable probability of a different outcome at the hearing and, in
19       turn, at trial.  Therefore, we conclude the district court did not err by denying this
        claim without first conducting an evidentiary hearing.

20

21   (Exh. 103 at 5-6.)

22        Gonzalez-Rojas fails to show deficiency or prejudice.  First, his claim of counsel's

23   deficiency is belied by the record.  His counsel filed the motion and put on the available

24   witnesses.  The witnesses testified that Lizarraga referred to her ability to get papers through

1   some sort of status related to suffering domestic violence.  But they also testified that Lizarraga

2   already had permanent residency.  The court notes that both witnesses also testified in a

3   convoluted and unclear manner.  Moreover, in light of the testimony of Lizarraga, the apartment

4   complex employees, the detective and sexual assault nurse, Gonzalez-Rojas has not

5   demonstrated a reasonable probability of a different outcome at the hearing or trial.  Gonzalez-

6   Rojas has failed to demonstrate that the Nevada Court of Appeals' decision was contrary to, or

7   involved an unreasonable application of, *Strickland*. *See* 28 U.S.C. § 2254(d).  I deny federal

8   habeas relief as to ground 2.

9        **Ground 3**

10       Finally, Gonzalez-Rojas contends that trial counsel was ineffective for failing to

11   introduce evidence of the parties' history of consensual "make-up sex" after arguments. (ECF

12   No. 1 at 28-32.)

13       Prior to the start of the first trial, Gonzalez-Rojas made an oral motion in limine to admit

14   evidence that Lizarraga and Gonzalez-Rojas had had consensual sex two days before the

15   incident. (Exh. 18.)  The state district court held an evidentiary hearing.  Lizarraga testified that

16   two days before the incident she and Gonzalez-Rojas had consensual sex. (*Id*. at 32-38, 50-56.)

17   She also said that within the year before the incident they had had consensual oral and anal sex a

18   few times.  Lizarraga agreed that when they had been together as a couple, they would

19   sometimes have sex shortly after making up after a fight.  The state district court ruled that the

20   defense could ask Lizarraga if she and Gonzalez-Rojas had engaged in consensual sex two days

21   prior to the incident but precluded the defense from asking about consensual "make-up sex"

22   unless the State opened the door to such testimony. (Exh. 17 at 15-16.)

23       The Nevada Court of Appeals rejected this claim that counsel was ineffective:

24         Gonzalez-Rojas claimed trial counsel was ineffective for failing to argue
           in a motion in limine for the admission at trial of the parties' history of consensual

make-up sex after an argument.  Although counsel did not reduce the request to writing, the trial court nevertheless considered Gonzalez-Rojas' oral argument on the merits before rejecting it.  Gonzalez-Rojas thus failed to demonstrate that counsel was objectively unreasonable for failing to reduce the request to writing.

Moreover, significant evidence of Gonzalez-Rojas' guilt was presented at trial.  The victim testified that he stabbed her, restrained her, and forced her to engage in sexual acts against her will.  Employees at the motel where the incident occurred testified that, when the victim approached them for help, she was crying, scared, and shaking.  She had a stab wound, two black eyes, and a gash on her nose.  She repeatedly told an employee not to let Gonzalez-Rojas into the room she was in and explained that he had stabbed her, tied her up, and sexually assaulted her.  The nurse that examined the victim testified that the victim suffered significant injuries, including lacerations to the bridge of her nose, lacerations to her right thigh and left arm, and swelling in her lips.  She explained that the victim was distressed to the point of crying and told her she thought she was going to die during the event.  Finally, Gonzalez-Rojas did not allege what additional argument counsel should have made in a written brief that was not made orally.  For the foregoing reasons, Gonzalez-Rojas failed to demonstrate a reasonable probability of a different result at either the motion-in-limine hearing or trial.  Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 103 at 3-4.)

Defense counsel cannot overcome the presumption that counsel performed effectively here.  His counsel argued for the admission of the make-up sex testimony.  Lizarraga's testimony at the evidentiary hearing did not establish a pattern of make-up sex.  Again, the State presented substantial evidence that the incident was a violent attack.  Thus, even if an alleged pattern of make-up sex earlier when they were in a relationship was presented to the jury, there was no reasonable probability that the jury would have concluded that the incident involving stabbing, beating, and rape was consensual.  Gonzalez-Rojas cannot demonstrate a reasonable probability of a different outcome at trial.  Gonzalez-Rojas has failed to demonstrate that the Nevada Court of Appeals' decision was contrary to, or involved an unreasonable application of, *Strickland*. *See* 28 U.S.C. § 2254(d).  Accordingly, I deny federal habeas relief as to ground 3.

1    **IV. CERTIFICATE OF APPEALABILITY**

2         This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing

3    Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). I have sua

4    sponte evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28

5    U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

6         A COA may issue only when the petitioner "has made a substantial showing of the denial

7    of a constitutional right." 28 U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits,

8    a petitioner "must demonstrate that reasonable jurists would find the district court's assessment

9    of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)

10   (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will

11   issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the

12   denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

13        None of my determinations and rulings in adjudicating Gonzalez-Rojas' petition meets

14   the *Slack* standard.  I therefore decline to issue a certificate of appealability regarding the

15   resolution of Gonzalez-Rojas' petition.

16   **V. CONCLUSION**

17        I THEREFORE ORDER that the petition for a writ of habeas corpus under 28 U.S.C.

18   § 2254 (**ECF No. 1) is denied**.

19        I FURTHER ORDER that a certificate of appealability is denied.

20        I FURTHER ORDER the Clerk of Court to enter judgment accordingly and close this

21   case.

22        Dated: December 28, 2022

23                                                    _____

                                                     U.S. District Judge Andrew P. Gordon

24